IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JOE D. WHISENHUNT and
MARGARET H. WHISENHUNT                                              PLAINTIFFS

V.                          4:07CV0001099 JMM

SOUTHWESTERN TELEPHONE L.P.,
d/b/a AT&T ARKANSAS, and
SOUTHWESTERN BELL TELEPHONE
COMPANY d/b/a AT&T ARKANSAS                                         DEFENDANTS

## ORDER GRANTING SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment. Plaintiffs have responded. For the reasons set forth below, the Motion is GRANTED.

On March 4, 2006, Plaintiffs Joe D. and Margaret H. Whisenhunt (the "Whisenhunts") sold real property ("Fellowship Property") to Fellowship Bible Church. The Whisenhunts retained adjacent real property (the "Whisenhunt Property"). (Ex. G to Complaint, Real Estate Purchase Agreement, at p. 1.) Under the Development Agreement between Fellowship and the Whisenhunts, the Whisenhunts agreed that they had "expertise in the development of real property" and, therefore, the Whisenhunts would "develop the Real Property, the Whisenhunt Property, certain streets and roads and areas adjoining and adjacent thereto. . . ." (Ex. J to Complaint at p. 1.) Specifically, the parties agreed that the Whisenhunts would perform the Site Improvement Work for the Properties.

The Site Improvement Work included dirt work, utilities, roadways, street lighting and drainage needed for the Properties, as well as obtaining all governmental approvals, permits and licenses necessary for the work. One aspect of the utility acquisition included providing telephone services and "the relocation/demolition of such services, lines, or utilities presently

existing (if any) and the installation/reinstallation of . . . wiring . . .and other appurtenant devices. . . ." (Ex. J to Complaint at p. 2.)  Fellowship agreed to contribute to the costs of performing the Site Work in an amount not to exceed Two Million Dollars.  (Ex. G to Complaint at p. 3.)

According to the map created by Development Consultants, several public streets surround and intersect the Real Property and the Whisenhunt Property.  (Ex. A to Complaint.)  These streets are Champlin Drive, Wellington Village Road, Wellington Hills Road and Kirk Road.  *Id.*  Wellington Hills Road and Kirk Road intersect with Chenal Parkway which connects I-630 to West Little Rock and Highway 10.  *Id.*  The map also shows that underground telephone lines were located beneath the center of Kirk Road but were proposed to be moved and extended to Fellowship Bible Church's facility.  *Id.*

Pursuant to the plans undertaken by Fellowship and the Whisenhunts, a request was made to the City of Little Rock Planning Commission ("LRPC") for a change in land use.  (Pl.'s Ex. 2 to the Resp. to Mot. for Summ. Judg. at p. 4.)  The Real Property and the Whisenhunt Property were previously zoned R-2, MF-6, O-2 and C-1 (single-family, multi-family, office, and commercial).  The Whisenhunts requested that its property be zoned O-2 and C-2- mix of 70% office and 30% commercial uses.  The Whisenhunts proposed basic development composition of 70% office and 30% commercial with multiple development guidelines, public infrastructure improvements, signage guidelines, grading and excavation guidelines.  In relation to the request, the Minutes of the LRPC state that, "The developer will review related utility infrastructure needs with the various utility companies and negotiate agreements for the installation of specific utility improvements that will be required."  (Pl's Ex. 2 to the Resp. to Mot. for Summ. Judg. at p. 12-14.)  The Minutes further discuss the Master Street Plan and refer to an amendment to the

Master Street Plan before the Board of Directors in this area.

> Wellington Hills Blvd. and Champlin Drive are shown as Arterials on the Plan. Kirk is shown as a Collector with a request to change it to an Arterial. . . . An Arterial functions to move traffic through and around the urban area or from activity centers to the Arterial system. . . . None of these roads are built to standard. Right-of-way and street improvements will need to be made at the time of development."

*Id.* at 16. Mr. Ernie Peters addressed the LRPC to detail the results of a traffic study for the area based upon the proposed changes to land use and zoning. *Id.* at 19. Mr. Peters stated:

> "the Wisenhunt's [sic] were proposing to improve the intersection of Kanis Road and Chenal Parkway, Kirk Road and Chenal Parkway and add an additional lane to Chenal Parkway adjacent to the existing Kroger Development. He stated the remaining roadway would need improvements via developers or with the expending of public funds. . . . Staff stated to assume the public would fund the improvements was not a safe assumption.
>
> Commissioner Rahman stated he would like additional time to review the traffic study and information provided by Mr. Peters and requested a deferral of the item. Mr. Dick Downing, representative of the [Whisenhunts], stated the owners did not have time for a deferral. He stated the time constraints were such that if the zoning were not approved the strict schedules imposed by the Fellowship Bible Church could not be met. Mr. Downing stated the developers were committed to infrastructure improvements abutting their ownership as required by the traffic study to facilitate traffic flows in the area.
>
> Mr. Downing stated the Board of Directors approved an amendment to the Master Street Plan to realign Wellington Hills and Kirk Roads and the changes proposed were specifically for the proposed development of the church and the current rezoning request. . . .
>
> A motion was made to approve the request as filed. The motion carried by a vote of 6 ayes, 0 noes and 5 absent.

*Id.* at 19-20.   The Minutes go on to detail Fellowship's permit request for the building of the church and facilities. In reference to the infrastructure work required for the request, the Minutes state:

> The overall infrastructure project planned by Whisenhunt Investments will include new construction and/or widening to Champlin Drive, Wellington Village Road, Wellington Hills Road, Kirk Road, Chenal Parkway, and Kanis Road (west of Chenal). Street will be

3

built to the full requirements as negotiated with City of Little Rock Traffic.

*Id.* at 36.

Ordinance Numbers 19,560 and 19,561 approved the planned zoning development and amended the official zoning map of Little Rock pursuant to the request of the Whisenhunts. (Def's Ex. 4 and 5 to the Mot. for Summ. Judg.)  Ordinance 19,560 Section 2(d)(1) states in pertinent part:

> (C) If it is determined from the updated traffic study required by this subsection that projected levels of service at any intersections adjacent to the proposed development will likely fall below acceptable level of service, as that term is defined by the Institute of Transportation Engineers at the time of the application for final plan approval, then as a condition of such approval, the developer shall agree to make such additional boundary street improvements as the City deems to be necessary to mitigate the impact of this development on that area;
>
> (D) The developer shall negotiate an agreement with City of Little Rock Public Works and Traffic Engineering for the installation of specific street improvement that will be required;
>
> (E) The developer shall review related utility infrastructure needs with the various utility companies and negotiate agreements for the installation of specific utility improvements that will be required understanding that the cost of relocation of any utilities may be the responsibility of the developer at the time of such relocation.

(Def's Ex. 4 to the Mot. for Summ. Judg.)

The Defendants have a franchise agreement with the City of Little Rock.  The franchise agreement entitles the Defendants to the use of Little Rock's streets.  This agreement was adopted by ordinance in 1952.  (Def.'s Ex. 8 to the Mot. for Summ. Judg.)  Beginning in 1969, the franchise ordinance was amended on an annual basis to set the annual privilege fee to be paid to the City by AT&T during the upcoming year.  In all other respects, the annual franchise ordinance adopted the same terms and conditions.  However, Ordinance Number 14,981,

4

adopted in 1985, included a specific utility relocation policy. It addresses utility relocation and the costs as follows:

> Section 10.  Utility Relocation Policy
>
> 10.1  In the interest of the public health, safety and welfare and consistent with the City's ordinances and master plans, the City of Little Rock may make or cause to be made improvements, repairs, or replacements of the public facilities located on public rights-of-way.  Such construction activity commonly requires adjustment or relocation of installations of public utilities. The City deems the right of public utilities to use public rights-of-way to be permissive and subordinate to the reasonable exercise of the City's police power.  Thus, the cost of relocating a public utility installation should not be borne by the City.
>
> For purposes of this policy, the term "public utility" shall mean any organization performing a public service by authority of the City of Little Rock, whether under a franchise or by a commission.
>
> 10.2  The policy of the City of Little Rock is to require a public utility to promptly adjust its facilities in, upon, under or above any right-of-way administered by the City of Little Rock and by officials, boards, commissions, and departments of the City of Little Rock, to accommodate construction, improvements, alterations or maintenance of public facilities when directed to do so by the Director of Public Works or other officials authorized by the City Manager.  Utilities shall make adjustments at their own expense, except as otherwise provided hereinafter, in connection with any public works projects approved and/or performed by the City regardless of the source of the funds for the project.
>
> 10.3  As a matter of policy the City will seek to minimize current and future installation adjustment costs for utilities by such measures as regular and systematic consultation in public works planning, advance engineering to the extent feasible, and careful consideration of public utility needs and installations in both planning and design.
>
> 10.4  The City will also reimburse a public utility for the direct costs of required adjustments when the utility can demonstrate that the utility acquired the right-of-way or otherwise occupied it prior to the dedication of the right-of-way either to the City of Little Rock or to any other unit of local government.  Adjustment costs shall be reimbursed, when appropriate, under an agreement between the City and the utility for the particular project.  Such agreement shall describe the scope of the utility's adjustment work and allocate costs.  The cost allocation shall not require the City to reimburse for betterments which are only occasioned by the adjustments required.

(Pl..'s Ex. 10 to the Mot. for Summ. Judg.)

Subsequently, the Whisenhunts requested that the Defendants relocate the telephone lines in accordance with the development plans.  The Defendants agreed to make the necessary relocations provided the Whisenhunts agreed to pay the costs. (Def.'s Ex.7 to the Mot. for summ. Judg.)  The Whisenhunts refused to pay the cost of the utility relocations and requested that the costs be paid by the Defendants.  The Whisenhunts filed suit against the Defendants for declaratory judgment seeking a determination as to who is responsible for the costs of the utility relocation.  The Defendants ask the Court to grant summary judgment of the claims.  The Defendants contend that the Whisenhunts' private development plan triggered the necessity for utility relocation and, therefore, the cost of the relocation must be borne by the Whisenhunts.  The Whisenhunts argue that the improvements to Kirk Road involve a public purpose and, therefore, the Defendants are responsible for the costs pursuant to the franchise agreement with the City of Little Rock.

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 248.

## Discussion of the Law

The Defendants cite *Ark. La. Gas Co. v. City of Little Rock*, 506 S.W.2d 555 (Ark. 1974) in support of its position that the Whisenhunts are responsible for the costs of relocating the telephone lines located on the Properties.  The Little Rock Housing Authority brought suit to require Arkla Gas Company to relocate certain gas lines located in an urban renewal project area.  The trial court found that Arkla was liable for the costs because the Housing Authority was an agent of the City of Little Rock.  On appeal, the Arkansas Supreme Court reversed.  The Supreme Court found that the Housing Authority was a separate and independent body corporate.  The Court stated, "Although the City did lend its cooperation under a written

agreement of cooperation, it is clear that Housing Authority was the dominant moving party in the Swaggerty Branch improvement." *Id.* at 558. As the dominant moving party in the project, the Housing Authority was responsible for the costs of relocating the gas lines.

In the instant case, the Whisenhunts argue that the City caused the improvements to Kirk Road to be made for the public good. While the City did require the improvements to Kirk Road to be made by the Whisenhunts, there is no evidence that the City would have undertaken the improvements at the time if the Whisenhunts were not developing the area. (*See e.g.*, Def.'s Ex. 18 to the Mot. for Summ. Judg., Depo. of Bruce Moore at p. 31; Def.'s Ex. 19 to Mot. for Summ. Judg., Depo. of Vince Floriani at p. 21; Pl.'s Ex. 2 to Resp. to Mot. for Summ. Judg., LPRC Minutes, at p. 19-20)("Mr. Downing stated the Board of Directors approved an amendment to the Master Street Plan to realign Wellington Hills and Kirk Roads and the changes proposed *were specifically* for the proposed development of the church and the current rezoning request. . . .") The City required the Whisenhunts to make the improvements to Kirk Road based upon the Whisenhunts' plans for development of the area. In other words, the Whisenhunts were the dominant moving party in the development of the Whisenhunt Property and the Fellowship Property which necessitated the improvements to Kirk Road.

Plaintiffs argue that the Defendants are required to shoulder the costs of the utility relocation pursuant to the Defendants' franchise with the City of Little Rock. The language of the franchise embodies the common law rule that public utilities are required to bear the cost of relocating equipment in a public right of way when the relocation is required by public necessity, or in Little Rock, when required for a "public works project." *See generally Norfolk Redev. & Housing Auth. v. Chesapeake & Potomac Telephone*, 464 U.S. 30 (1983): Little Rock, AR.,

Ordinance Number 14,981 (1985).  "An exception to the general rule is . . . held to exist when the actions of a private developer necessitate the relocation of the utility lines."  99-181 Op. Ark. Att'y Gen. (1999)(citing *Pacific Gas and Electric Company v. Dame Construction Company, Inc.*, 191 Cal. App3d 233 (Cal. 1987)).  The Court does not find any evidence that the development of the Fellowship Property or the Whisenhunt Property which necessitated the improvements to Kirk Road was a "public works project."   Instead, the situation falls squarely within an exception to the general rule.

The Court is also persuaded by other jurisdictions which have found a private developer liable for the costs of relocating utilities in order to improve roadways around the developer's property.  *See Pac. Gas & Elec. Co. v. Dame Const. Co., Inc.*, 191 Cal. App. 3d 233 (Cal. 1987)("[W]e hold that where a private party, on its own initiative and not that of government, develops a parcel of land and thereby creates or aggravates a need for a public improvement which requires the relocation of existing utility equipment, the private party shall bear the necessary relocation costs."); *Potomac Elec. Power Co. v. Classic Comm. Corp.*, 856 A.2d 660 (Md. 2004)("We find no legal basis, and certainly no equitable one, for requiring a utility's rate-paying customers to bear a cost triggered and made necessary by a private developer's project and thus, in effect, to subsidize the cost of the development."); *Home Builders Ass'n v. St. Louis Cty. Water Co.*, 784 S.W.2d 287 (Mo. 1989)("Developers, by their private development decisions, have triggered the need for road improvements and thus for facility relocations. They are in a position, when making those development decisions, to factor the cost of utility relocations into their project plans. They can accept those costs, if feasible, and proceed to complete their projects. Or, they can decline to undertake a project if the relocation costs are

beyond their present resources. Developers thus have a better opportunity than the Water Company to anticipate and to plan for the costs of relocation associated with their proposed projects."); *Sundquist Homes Inc. v. Snohomish Cty. Publ Util. Dist. No. 1*, 140 Wash. 2d 403 (Wash. 2000)("The principal issue before us is whether a public utility district may charge a real estate developer for costs the district incurs in relocating electrical transmission facilities, when the relocation is a necessary condition of the developer's project. We answer that question in the affirmative. . . .").

Moreover, the evidence in the record shows that the Whisenhunts, through their representative, agreed to make the necessary infrastructure improvements required by the City in order to expedite the LRPC's approval of the development plans. (Pl.'s Ex. 2 to Resp. to Mot. for Summ. Judg. at p. 19-20.) The Whisenhunts also negotiated the costs of the infrastructure improvements into their Real Estate Sale Agreement and Development Agreement, of which the utility relocation was a part. (Ex. J to Complaint at p. 2.)

Based upon this evidence, the Court finds there is no question of material fact to be decided by a jury. The development of the Properties is not a "public works project" as required by the Defendants' franchise. The Plaintiffs were the "dominant moving party" in causing the telephone lines to be relocated. *Ark. La. Gas Co.*, 506 S.W.2d at 558. Plaintiffs are responsible for the costs of the utility relocation.

The Defendants' Motion for Summary Judgment (Docket # 24) is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED this 7th day of October 2008.

_____
James M. Moody
United States District Judge